**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| William Deehan, | ) | |
|                Plaintiff, | ) | Civil Action No.: 3:22-cv-00880-JMC |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Unum Group and Colonial Life & Accident | ) | |
| Insurance Company, | ) | |
| | ) | |
|                Defendants. | ) | |
| | ) | |

This matter is before the court pursuant to William Deehan's ("Plaintiff") Motion to Remand. (ECF No. 4.) For the following reasons, the court **GRANTS** Plaintiff's Motion to Remand (ECF No. 4), **DENIES** his request for attorney's fees, and **REMANDS** this case to the South Carolina Court of Common Pleas, for the Fifth Judicial Circuit for further proceedings.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff began his employment with the Unum Group ("Unum") in 1986. (ECF 1-1 at 6.) In 1993, Unum acquired Colonial. (*Id.*) Plaintiff continued working for Unum until he accepted a position as Senior Vice President of Colonial[1] in 2013. (*Id.*) In this role, Plaintiff primarily worked from Colonial's corporate office in Columbia, South Carolina. (*Id.* at 7.) Additionally, Plaintiff reported to Colonial's South Carolina President and managed Colonial's sales team. (*Id.*)

On March 1, 2021, Unum and Plaintiff entered into a restricted stock unit agreement ("the RSU") wherein the purpose of the RSU was to annually grant Plaintiff 6,112 restricted units of stock over the course of three years. (*Id.* at 16.) Colonial is not a party to this agreement; however,

---

[1] The court observes within his Complaint, Plaintiff never directly asserts that he was the Senior Vice President of Colonial. In fact, paragraph 14 of his complaint simply alleges "Mr. Deehan became a Senior Vice President." However, when the complaint is read in its entirety, the court concludes Plaintiff was an employee of Colonial. (*See* ECF No. 1-1.)

1

it is a subsidiary of Unum. Subsequently, Plaintiff was involuntarily terminated on November 15, 2021, and all opportunities to receive stock were forfeited. (*Id.* at 8.) Prior to his termination, Plaintiff worked in the insurance industry for thirty-six years. (*Id.* at 4.) After his termination, Plaintiff created WND Consulting LLC, and performed consulting work for Unum's competitor Aflac. (ECF Nos. 1-1, 1-3.) In response, Unum sent Plaintiff a cease-and-desist letter, alleging he will take legal action against Plaintiff because Unum considers Plaintiff's work for Aflac a violation of the non-compete provision of the RSU. (ECF No. 1-1 at 27-28.) The RSU's restrictive period, which includes the non-compete clause, is twelve months long; accordingly, it will end November 11, 2022. (*Id.*) The non-compete provision under §9(a)(ii) of the RSU states the following:

> The Employee shall not, at any time during the RSU Restricted Period, without the prior written consent of the Company, directly or indirectly, own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be employed by, consult with, render services for, or be connected in any other manner with, any Competing Business, whether for compensation or otherwise. For the purposes of this Agreement, a "Competing Business" shall be any business in the United States which is engaged in the sale or provision of employee benefits or other products or services of the type offered by the Company or its Affiliates (including, without limitation, life, critical illness, income protection, disability, accident, dental, vision, hospital indemnity, and medical stop-loss insurance products and leave management services), unless the Employee's primary duties and responsibilities with respect to such business are not related to the management, operation or provision of such products or services. Notwithstanding the requirements of this paragraph, the Employee shall not be prohibited from owning less than 1% of any publicly traded corporation, whether or not such corporation is deemed to be a Competing Business.

(*Id.* at 19.)

On February 28, 2022, Plaintiff filed a Complaint for Declaratory Judgment against Unum and Colonial (collectively "Defendants") in South Carolina State Court, specifically alleging that the restrictive covenants under § 9(a)(ii) of the RSU "are overbroad, unreasonable, invalid, and unenforceable as a matter of law" and that the agreement is not supported by consideration. (*Id.*

2

at 4, 8.) In essence, Plaintiff maintains these restrictive covenants in the RSU prevent him from working for any insurance company, in any capacity; as a result, the restrictions within the RSU are interfering with his right to earn a living. (*Id.* at 5, 9-10.)

## II.     LEGAL STANDARD

Federal courts are courts of limited jurisdiction. Thus, a defendant is permitted to remove a case to federal court if the court would have had original jurisdiction over the matter. 28 U.S.C. § 1441(a). However, pursuant to 28 U.S.C. § 1441(b)(2), "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.*

A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States; . . ." 28 U.S.C. § 1332(a). Moreover, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *Id.* Under § 1332 there must be complete diversity between all parties wherein "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

Rule 20(a)(2) of the Federal Rules of Civil Procedure explains that a plaintiff may properly join multiple defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.

The United States Court of Appeals for the Fourth Circuit has stated that "joinder is fraudulent if there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming." *AIDS Counseling & Testing Ctrs. v. Grp. W. Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990) (furthermore, the court is not bound by the parties' pleadings to determine whether fraudulent joinder exists and may "consider the entire record, and determine the basis of joinder by any means available"). The Fourth Circuit further explained that "[t]o show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). After resolving all issues of fact and law in the plaintiff's favor, the removing party must demonstrate that the plaintiff cannot establish a claim against an in-state defendant. *Mayes*, 198 F.3d at 464; *Hartley*, 187 F.3d at 424; *Carter v. Hitachi Koki U.S.A., Ltd.*, 445 F. Supp. 2d 597 (E.D. Va. 2006).

A court must not consider the citizenship of nominal parties. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") In the Fourth Circuit, "[n]ominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013). In determining whether someone is a real party to an interest, the court may consider the following four factors:

> First, a court will consider the level of control that the party retains over the litigation. This can be evidenced by the party's appearance in the proceedings. Second, a court will look to the weightiness of the party's interest in the litigation. To determine the significance of the interest, a court will often consider the likelihood that the party will incur financial liability as a result of later proceedings.

4

> Third, a court will take into account whether the party has retained counsel. Finally, a court will consider whether the party has given a statement or a deposition.

*Owens v. Overstreet*, No. CIV.A. 1:10-00784, 2010 WL 4721709 (S.D.W. Va. Nov. 15, 2010) (internal citations omitted).

### III.     ANALYSIS

#### A.     Jurisdiction

On March 16, 2022, pursuant to 28 U.S.C. § 1332, Defendants removed the matter to this court based on diversity jurisdiction. (ECF No. 1-2 at 2.) Thereafter, on March 21, 2022, Plaintiff filed a Motion to Remand, contending that removal is improper under the home-state defendant rule because Colonial is a citizen of South Carolina. (ECF No. 4 at 1-2.) In response, Defendants contend that Colonial is not properly joined and is a nominal party. (ECF No. 7.) Moreover, Defendants claim that Colonial is fraudulently joined to destroy diversity jurisdiction and that Plaintiff has no cause of action against Colonial. (*See id.* at 4-6.)

The Fourth Circuit has ruled that "if a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293 (4th Cir. 2008). Typically, a defendant may remove a civil action from state court to federal court, provided that the federal court has jurisdiction. 28 U.S.C. § 1441(a). Plaintiff is a citizen of Georgia. (ECF No. 1 at 3-4.) Unum is a Delaware corporation with its principal place of business located in Chattanooga, Tennessee, and Colonial is a South Carolina corporation with its principal place of business located in Richland County, South Carolina. (*Id.* at 4.) Furthermore, the amount in controversy is satisfied because Plaintiff's base salary in 2021 was $350,000.00. (ECF No. 1-5 at 1.) The issue presented is whether Colonial is properly joined and if it is a nominal party. (ECF No. 7.)

### B.     Permissive Joinder of Parties

Regarding Rule 20 of the Federal Rules of Civil Procedure, the United States Supreme Court stated that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).  However, despite this notion, under Rule 20, the party seeking to join multiple defendants still must prove "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.

The United States Court of Appeals for the Eighth Circuit explained, "transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974).  Accordingly, a transaction, or series of transactions may include "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* at 1333-34 (holding that a general policy promulgated by the defendant constituted the same series of transactions or occurrences).  Furthermore, subsidiaries, despite being legally distinct entities from their parent organization, can be properly joined under Rule 20. *See e.g., Corral One, LLC v. Depositors Ins. Co.*, No. 4:21-CV-00119-RP-CFB, 2021 WL 5240822 (S.D. Iowa May 20, 2021) (three different companies using the same letterhead, employees, and contractual language when denying coverage constituted a series of transactions).  Moreover, representations made during the formation of the contract as well as representations made in connection with that contract can be logically related. *Travelers Ins. Co. v. Intraco, Inc.*, 163 F.R.D. 554 (S.D. Iowa 1995).

Here, the first requirement under Rule 20 is satisfied because Colonial stands to benefit from being injured by the covenants within the RSU. Plaintiff is seeking declaratory relief from the RSU wherein only Plaintiff and Unum are parties. Yet, throughout the RSU, Unum repeatedly references "its Affiliates." (ECF No. 1-1 at 17-20, 22, 25.) The RSU explicitly states that "All capitalized terms used herein, to the extent not defined, shall have the meaning set forth in the Plan." (*Id.* at 16.) However, even though the term "Affiliates" is capitalized throughout the RSU, "Affiliates" is never defined. *Id.* Moreover, because § 19 of the RSU repeatedly uses the terms Subsidiaries and Affiliates in the same phrasing, the court concludes that Colonial fits within the RSU's definition of Affiliate. (*Id.* at 22.)

The second requirement under Rule 20 is that "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. Rule 20 does not require "all questions of law and fact raised by the dispute be common." *Health Care Serv. Corp. v. Albertsons Cos., LLC*, No. 21-CV-0461, 2021 WL 4273020 (D. Minn. Sept. 21, 2021) (citing *Mosley*, 497 F.2d at 1334). The Eighth Circuit holds that questions of law or fact do not require a qualitative or quantitative test of commonality; instead, courts have found common questions of law or fact "in a wide range of context[s]." *See Mosley*, 497 F.2d at 1334.

In his complaint, Plaintiff highlights the non-compete provision under § 9(a)(ii) of the RSU as "overbroad, unreasonable, invalid, and unenforceable as a matter of law." Within this section, Unum mentions "its Affiliates." (*See id.* at 19.) This section, in relevant part, states Plaintiff shall not be:

> employed by, consult with, render services for, or be connected in any other manner with, any Competing Business. For the purposes of this Agreement, a "Competing Business" shall be any business in the United States which is engaged in the sale or provision of employee benefits or other products or services of the type offered by the Company *or its Affiliates*…

7

(*Id.*) (emphasis added).

In essence, Colonial, as an affiliate, benefits from the RSU because Plaintiff is prohibited from competing against them as well as Unum. In other words, the RSU impacts both Colonial as well as Unum.[2] Therefore, the first element under Rule 20 is satisfied because Plaintiff's request for declaratory relief arises out of the same transaction. Accordingly, the second element under Rule 20 is satisfied because there are common questions of law and fact that will arise based on the RSU's alleged restrictive covenants.

### C.     Fraudulent Joinder

In determining fraudulent joinder, the court must consider if there is any intention of receiving a joint judgment; thereafter, the court resolves all issues of fact and law in the plaintiff's favor. *Hartley*, 187 F.3d at 424. In the Fourth Circuit, "[t]o show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id.* In doing so, Plaintiff must raise a "slight possibility" or a "glimmer of hope" that he could assert a viable claim against the in-state defendant. *Id.* at 426. Defendant's memorandum in opposition to Plaintiff's Motion to Remand states that "Defendants do not contend that Plaintiff committed outright fraud by joining Colonial." (ECF No. 7 at 3.) Accordingly, the court will analyze whether there was any possibility that Plaintiff could establish a cause of action against Colonial.

---

[2] The court notes when the RSU was signed, Plaintiff was working for Colonial, and he continued to work for Colonial until his involuntary termination.

Plaintiff seeks a declaratory judgment[3] based on S.C. Code § 15-53-10, *et seq.*, (West 2021) and Plaintiff named Colonial and Unum as the defendants in this action. Under Section 15-53-80, "when declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." In interpreting this statute, South Carolina district courts have held that the dispute between parties must be material. *See Winslow v. Hudson*, No. CV 9:18-0426-MBS, 2018 WL 11241965 (D.S.C. Aug. 29, 2018) (parties whose disputes were immaterial were deemed nominal parties and dismissed from further proceedings); *but see Ballard v. Admiral Ins. Co.*, No. CV 3:17-2916-DCC-SVH, 2018 WL 1747942 (D.S.C. Mar. 20, 2018), *report and recommendation adopted*, No. CV 3:17-2916-DCC, 2018 WL 1745176 (D.S.C. Apr. 11, 2018) (because plaintiff was required to join defendants as parties in their declaratory judgment claim under the state statute, the defendants could not be nominal parties or fraudulently joined).

Here, Colonial is not fraudulently joined because Plaintiff was required to name Colonial as a party pursuant to the state statute. *Id.* at *3. Furthermore, Colonial is likely to have an interest regarding whether the declaration is granted. For example, if the declaration is granted, Plaintiff could theoretically directly compete against Colonial. In that instance, Colonial would be affected by the judgment, and it would face significant prejudice if it were absent from the proceedings. On the other hand, Colonial would benefit if Plaintiff was unable to compete against Unum and its affiliates. Therefore, in bringing a claim under S.C. Code § 15-53-10, *et seq.*, Plaintiff has satisfied

---

[3] "Federal courts sitting in diversity apply federal procedural law and state substantive law. We treat a state court declaratory action that is removed as invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Consequently, South Carolina law does not govern the nominal party determination." *See Hartford Fire Ins.*, 736 F.3d at 261, n.3 (internal citations omitted).

the requisite "slight possibility" standard that he can bring a claim against Colonial. Consequentially, Colonial is not fraudulently joined.

### D. Nominal Party

The court must not consider the citizenship of parties without an immediately apparent stake in the litigation. *Hartford Fire Ins.*, 736 F.3d at 260 ("the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way.") In determining whether someone is a real party, this court will consider the most relevant factors outlined in *Overstreet*, particularly, the weightiness of the party's interest to the litigation. *Overstreet*, No. CIV.A. 1:10-00784 (S.D.W. Va. Nov. 15, 2010).

Here, the suit cannot be resolved without affecting Colonial. As discussed above, if an adverse judgment to Colonial was rendered in their absence, Colonial would be prejudiced. Because Plaintiff worked as a Senior Vice President for Colonial for approximately nine years, a violation of this non-compete could result in significant injury to Colonial. Similarly, Colonial would benefit if the non-compete provision is upheld. As a result, Colonial has a significant interest in the litigation and is not a nominal party.

### E. Attorney's Fees

In his Motion to Remand, Plaintiff also requests attorney's fees, stating:

The United States Supreme Court has ruled that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). The Supreme Court has ruled:

> [t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c)

> should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id.* at 140.

The Fourth Circuit has found that 28 U.S.C. § 1447(c) "provides the district court with discretion to award fees when remanding a case" where it finds such awards appropriate. *In re Lowe*, 102 F.3d 731, 733 n. 2 (4th Cir. 1996).

(ECF No. 4 at 3.)

This court finds that Defendants had an objectively reasonable basis for seeking removal of this action. If this court found that Colonial was fraudulently joined, Colonial would be dismissed from the action, and removal would be proper. Accordingly, Plaintiff's request for attorney's fees is denied.

## IV.  CONCLUSION

Following a complete and thorough review, the court **GRANTS** Plaintiff's Motion to Remand (ECF No. 4), **DENIES** his request for attorney's fees, and **REMANDS** this case to the South Carolina Court of Common Pleas, for the Fifth Judicial Circuit for further proceedings.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 1, 2022
Columbia, South Carolina